UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE LINDSAY,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | NO. CV 07-4265 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

    Andre Lindsay filed this action on July 3, 2007. Pursuant to 28 U.S.C. § 636(c), the parties filed Consents to proceed before Magistrate Judge Rosenberg on July 16 and July 19, 2007. On March 25, 2008, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

    Having reviewed the entire file, the Court affirms the Commissioner's decision.

///

///

///

///

# I.

## **PROCEDURAL BACKGROUND**

On March 22, 2004, Lindsay protectively filed an application for supplemental security income benefits. A.R. 18. The Commissioner denied the application initially.[1] *Id.*; A.R. 56. The Administrative Law Judge ("ALJ") held a hearing on August 3, 2005, and a supplemental hearing on December 13, 2005. A.R. 325-39, 340-73. The first hearing was continued for further development of the record. A.R. 327, 331-34, 336-39. At the supplemental hearing, the ALJ elicited testimony from Lindsay and a vocational expert. A.R. 340-73. On May 17, 2006, the ALJ issued a decision denying benefits. A.R. 15-31. On April 6, 2007, the Appeals Council denied Lindsay's request for review. A.R. 9-12. This lawsuit followed.

# II.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the

---

[1] Although Lindsay's request for a hearing was untimely filed, he established good cause for the late filing. A.R. 18.

evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

### III.
### DISCUSSION

**A.    Disability**

"A person qualifies as disabled, and thereby eligible for such benefits, only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and internal quotation marks omitted).

**B.    The ALJ's Findings**

The ALJ found that Lindsay had severe impairments of "tendinitis and bursitis of the left shoulder." A.R. 29. The ALJ determined that Lindsay had the residual functional capacity to "lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total of about 6 hours in an 8-hour workday, and sit for a total of about 6 hours in an 8-hour workday. He would be able to occasionally climb ropes, scaffolds, and ladders, and frequently perform all other postural activities. He would not be able to perform overhead reaching, but he would be able to occasionally reach in all other directions with the left upper extremity. He would be able to occasionally push and pull with the left upper extremity." A.R. 30.

The ALJ concluded that Lindsay could not perform any of his past relevant work as a cargo agent, parking enforcer, or warehouse worker. A.R. 28, 30. The ALJ found that "[a]lthough [Lindsay's] exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.17 as a framework for decision-making, there are a significant number of jobs in the

national economy that he could perform." A.R. 30. Examples include laundry sorter or counter clerk. A.R. 29, 30.

### C. Severity of Mental Impairment

Lindsay contends that the ALJ erred in finding that he does not suffer from a severe mental impairment. JS 4. At Step Two of the sequential analysis, the claimant bears the burden of demonstrating a severe, medically determinable impairment that meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). To satisfy the duration requirement, the severe impairment must have lasted or be expected to last for a continuous period of not less than 12 months. *Id.* at 140.

> Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.

20 C.F.R. §§ 404.1508, 416.908. "[T]he impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'"[2] *Yuckert*, 482 U.S. at 154 n.11 (quoting 20 C.F.R. § 404.1520(c)); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[A]n impairment is not severe if it

---

[2] Basic work activities include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers, and usual work situations"; and "[d]ealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521(b), 416.921(b).

4

does not significantly limit [the claimant's] physical ability to do basic work activities.") (citation and internal quotation marks omitted).

"An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (emphasis in original, citation omitted). Step Two is "a *de minimis* screening device [used] to dispose of groundless claims" and the ALJ's finding must be "'clearly established by medical evidence.'" *Id.* at 687 (citations and internal quotations omitted). "[T]he ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen*, 80 F.3d at 1290 (citations omitted). The ALJ is also "required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity." *Id.* (citations omitted). The Commissioner does not consider age, education, and work experience. 20 C.F.R. §§ 404.1520(c), 416.920(c).

### 1. ALJ's Finding at Step Two

At Step Two, the ALJ did not find that Lindsay had a severe mental impairment. A.R. 27, 29. The ALJ's finding at Step Two was clearly established by medical evidence.

The ALJ relied on a consultative examining psychologist, Dr. Reznick. A.R. 22. On September 2, 2005, Dr. Reznick conducted a consultative psychological evaluation on Lindsay. A.R. 205-12. Dr. Reznick performed a battery of psychological tests, including a Rey 15 Item Memory Test - II ("Rey 15"), Bender Visual-Motor Gestalt Test - II ("BVMGT-2"), Wechsler Adult Intelligence Scale - III ("WAIS-3"), Wechsler Memory Scale - III ("WMS-3"), and Minnesota Multiphasic Personality Inventory - II ("MMPI-2"). A.R. 210-11. In addition, Dr. Reznick reviewed Lindsay's medical records. A.R. 207.

Dr. Reznick noted: "The claimant presented with what appeared to be a sub-optimal effort throughout this evaluation, resulting in test performances that seem to underestimate his actual levels of functioning. In addition, the claimant appeared to be a vague historian whose history was lacking in credibility, at least in some respects." A.R. 22, 25, 205, 209. Specifically, Dr. Reznick observed that the results from the Rey 15 indicated "a high probability of malingering." A.R. 210. Additionally, Dr. Reznick noted that although the results from the WAIS-3 indicated mild mental retardation, Lindsay's "average language facility," "intact verbal comprehension," "ability to carry on a normal conversation" with the examiner and ability to "supply a detailed and coherent history during the subsequent interview" suggested "significantly higher intellectual functioning than the I.Q. estimates obtained" from the test. A.R. 210-11. Dr. Reznick also commented that Lindsay's MMPI-2 profile contained "an elevated Lie Scale, suggesting that he did not approach the MMPI in a completely truthful manner." A.R. 211. Dr. Reznick added that the MMPI-2 results also suggested that Lindsay "engaged in unfavorable impression management, ostensibly for self-serving reasons." *Id.* As the ALJ noted, Dr. Reznick identified specific examples of inconsistencies in Lindsay's statements. A.R. 25-26. For example, Lindsay stated that he is unable to drive a car, but indicated on the written questionnaire that he drove himself to the evaluation. A.R. 26, 209.

Dr. Reznick diagnosed Lindsay with alcohol abuse, in remission, by history, and antisocial personality traits. A.R. 23, 211. The Medical Source Statement of Ability to Do Work-Related Activities (Mental) completed by Dr. Reznick indicate that Lindsay had no work-related limitations arising from his mental impairment. A.R. 23, 213-215.

The ALJ did not err in relying on Dr. Reznick's opinion and concluding that Lindsay's mental impairment was not severe. Dr. Reznick's opinion is well-supported by objective clinical tests. *See Tonapetyan v. Halter*, 242 F.3d 1144,

1149 (9th Cir. 2001) (holding that the opinion of a consultative examiner "alone constitutes substantial evidence" when it rests on an independent examination of the claimant).

Lindsay contends that his medical records from Augustus F. Hawkins ("AFH") and medical records submitted to the Appeals Council demonstrate the existence of a severe mental impairment. JS 4-5.

Dr. Reznick reviewed the medical records from AFH. A.R. 207. As both Dr. Reznick and the ALJ noted, the AFH physician's initial diagnosis also included possible malingering. A.R. 26, 207. On June 30, 2005, a physician initially diagnosed Lindsay with "somatization disorder vs. malingering vs. GAD [generalized anxiety disorder] vs. conversion disorder vs. depressive disorder" and indicated a plan for "psych testing."[3] A.R. 160. However, Lindsay did not return for follow-up treatment or testing, and a discharge summary was prepared on September 21, 2005. A.R. 262. By contrast, Dr. Reznick completed psychological testing.

Lindsay points to an earlier intake form prepared by a social worker at AFH on June 27, 2005. The ALJ found that the social worker was not an acceptable medical source and accepted the evidence only as a record of Lindsay's complaints. A.R. 27. A social worker is not an acceptable source of medical evidence of an impairment. 20 C.F.R. § 404.1513(a), (d)(1). An ALJ may properly discount a social worker's opinion without satisfying the legal standards applicable to a treating physician. *Bunnell v. Sullivan*, 912 F.2d 1149, 1152-53 (9th Cir. 1990) ("there is no requirement that the Secretary accept or specifically refute such evidence" from a non-medical source), *rev'd on other grounds*, 947 F.2d 341, 348 (9th Cir. 1991). On the other hand, the ALJ may use such

---

[3] The physician assessed a GAF score of 50 and prescribed Zoloft and Benadryl. A.R. 160.

evidence "to show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. § 404.1513(d)-(e).

The social worker stated to Lindsay that he "would not be Ct's therapist." A.R. 162. Lindsay told the social worker that he has no previous mental health history. A.R. 155. The social worker noted that Lindsay had "minimum" impairment of insight and judgment (A.R. 158), which is consistent with a finding that any mental impairment "'has no more than a minimal effect on an individual's ability to work.'"[4] *Webb*, 433 F.3d at 686-87 (citation omitted). The social worker thought that "[p]ossible" cognitive deficits should be ruled out. A.R. 159. As noted above, however, Lindsay did not show up for follow-up appointments. Lindsay reported feeling depressed over a small settlement he received for a car accident. A.R. 162. The social worker diagnosed somatoform disorder, not otherwise specified, and schizoaffective disorder. A.R. 159. The social worker assessed a Global Assessment of Functioning ("GAF") score of 47.[5] *Id.*

The ALJ properly gave these medical records "little weight" because it came from an unacceptable medical source, was not based on an ongoing treatment relationship, and was not supported by the other medical records. A.R. 27; *see* 20 C.F.R. § 404.1513(a) ("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s)."); 20 C.F.R. § 404.1508 (mental impairment "must be established by medical

---

[4] Consistent with Dr. Reznick, the social worker noted that Lindsay appeared to have a "below average" fund of knowledge and "impaired" intellectual functioning. *Compare* A.R. 158 *with* A.R. 209.

[5] The GAF scale is used by clinicians to report a patient's overall level of functioning and to make treatment decisions. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed. 2000) (hereinafter "DSM IV"). A GAF score is not determinative of mental disability for social security claim purposes. *See* 65 Fed. Reg. 50746, 50765 (August 21, 2000) ("[The GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings."). A GAF of 41-50 denotes "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM IV at 34.

evidence consisting of signs, symptoms, and laboratory findings"); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir.) (opinions from "other sources" can be afforded "less weight than opinions from acceptable medical sources."), *cert. denied*, 519 U.S. 881 (1996); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (even as to treating physician, ALJ may consider length of treatment relationship, frequency of examination, nature and extent of treatment relationship, consistency with record as a whole); 20 C.F.R. § 404.1527(d)(1)-(6) (same).

### 2. Records Submitted to the Appeals Council

On March 26, 2007, after the ALJ's decision, Lindsay submitted records from AFH to the Appeals Council. (A.R. 295-324.) Putting aside medical records duplicative of those previously submitted to the ALJ, the new medical records show that Lindsay returned to AFH on October 12, 2006, after the ALJ's decision dated May 17, 2006, and after his case was closed at AFH on September 21, 2005. A.R. 306. Lindsay received treatment through January 17, 2007. A.R. 298-306. Lindsay argues that the medical records "buttress the opinions of the social worker and demonstrate[] the existence of a severe mental impairment." JS 5.

If "new and material evidence is submitted," the Appeals Council "shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. §§ 404.970(b), 416.1470(b).

Nothing in the new medical records indicate that they relate to the period on or before the date of the ALJ's decision. Lindsay makes no such showing. *See Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (claimant bears burden of showing that post-decision diagnosis is material to relevant time

period); *Bates v. Sullivan*, 894 F.2d 1059, 1064 (9th Cir. 1990) (affirming denial of benefits based on report dated months after ALJ's adverse decision which did not pertain to medical evidence during the relevant time period).  To the extent Lindsay's mental health condition changed, nothing prevents him from filing a new application based on this new evidence.  *See Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 512 (9th Cir. 1987) (new evidence indicating mental deterioration after date of ALJ's decision may be material to new application); 20 C.F.R. § 416.330(b) ("If you first meet all the requirements for eligibility after the period for which your application was in effect, you must file a new application for benefits.").  Lindsay's existing application, however, covers only the time period on or before the date on which the ALJ's decision issued.  *See* 20 C.F.R. § 416.330.

### D.  **Plaintiff's Credibility**

Lindsay argues that a primary reason that the ALJ did not find a severe mental impairment is that the ALJ improperly rejected Lindsay's credibility.  JS 8.  However, subjective symptoms alone cannot establish a mental impairment at Step Two.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005); Social Security Ruling (SSR) 96-4p.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

Under the first prong, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'  The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'  'Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is

no showing that the impairment can reasonably produce the *degree* of symptom alleged.'" *Id.* (citations omitted); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).

Here, the ALJ found that Lindsay suffered from tendinitis and bursitis of the left shoulder. A.R. 29. However, the ALJ found that there was no objective medical evidence of a severe mental impairment. A.R. 27. The ALJ's finding is supported by substantial evidence as discussed above in Part III.C.

Under the second prong, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

Lindsay does not assert that the ALJ must satisfy the clear and convincing standard to discount his credibility. JS 13. The clear and convincing standard applies only where there is no evidence of malingering. *Carmickle v. Commissioner of the Social Security Administration*, 533 F.3d 1155, 1160 & n.1 (9th Cir. 2008); *Lingenfelter*, 504 F.3d at 1036. As discussed above in Part III.C. and as noted by Lindsay (JS 13), there is evidence of malingering in this case. Therefore, the ALJ need only set forth specific and legitimate reasons for discounting Lindsay's credibility. *See Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id.* (citation and internal quotation marks omitted). The distinction in the governing legal standard does not affect the outcome of this case because the ALJ's credibility finding is supported by substantial evidence under both the clear and convincing standard and the specific and legitimate reasons standard.

11

The ALJ found that Lindsay's "allegations regarding his limitations are not totally credible." A.R. 30. The ALJ listed three reasons: (1) medical providers noted Lindsay's lack of credibility; (2) the validity of Lindsay's somatic complaints was questioned by medical providers; and (3) failure to obtain treatment. A.R. 25-26 & n.3.

Lindsay appears to concede that "the ALJ may have provided some legitimate reasons for discounting Lindsay's subjective symptoms." JS 14. However, Lindsay argues that because the ALJ also provided non-legitimate reasons, the case must be remanded. *Id.*

Lindsay's argument was rejected by the Ninth Circuit in *Carmickle v. Commissioner of the Social Security Administration*, 533 F.3d 1155 (9th Cir. 2008). In *Carmickle*, the Ninth Circuit concluded that two of the ALJ's reasons for making an adverse credibility finding were invalid. The court held that when an ALJ provides specific reasons for discounting the claimant's credibility, the question is whether the ALJ's decision remains legally valid, despite such error, based on the ALJ's "remaining reasoning *and ultimate credibility determination.*" *Id.* at 1162 (italics in original). Therefore, when, as here, an ALJ articulates specific reasons for discounting a claimant's credibility, reliance on an illegitimate reason(s) among others does not automatically result in a remand.

The ALJ properly relied on physician notations regarding Lindsay's lack of credibility. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (statements by physicians concerning nature, severity, and effect of a claimant's symptoms may be considered in weighing claimant's credibility); *see also Smolen*, 80 F.3d at 1284 (ALJ may use "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid").

As the ALJ found, Dr. Reznick noted Lindsay's sub-optimal effort during the psychological evaluations and noted that the test performances seemed to underestimate his actual levels of functioning. A.R. 25, 205. *See Thomas*, 278 F.3d at 959 (ALJ may rely on claimant's failure to give maximum or consistent effort during examinations). The ALJ also relied on Dr. Reznick's notations regarding inconsistencies in Lindsay's answers. A.R. 25. For example, Lindsay stated to Dr. Reznick that he was unable to drive a car. However, in the written questionnaire, Lindsay reported that he drove himself to the appointment. A.R. 25, 208-09. Inconsistencies or discrepancies in a claimant's statements may be considered in weighing credibility. *Thomas*, 278 F.3d at 958-59.

The ALJ also properly relied on the absence of medical records supporting Lindsay's allegations, although it would not be sufficient alone to discount his credibility. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Here, Lindsay complained of diabetes and hypertension, but the examining physician saw no sign of diabetes in his medical records[6] and his blood pressure was "unremarkable" today, with the diastolic slightly elevated (122/88). A.R. 25, 216-219. Lindsay complained of multiple skull fractures and paralysis on the left side from an automobile accident in 2002, but the medical record indicates sprains and strains of the back and left shoulder with no discussion of any skull fractures or paralysis. A.R. 26, 128-133, 206. The ALJ also noted that when Lindsay presented with multiple somatic complaints involving multiple systems at the Hubert H. Humphrey Comprehensive Health Center, the records contain a notation to rule out somatoform disorder versus GAD (generalized anxiety disorder). A.R. 26, 170. As noted above, the AFH physician's initial diagnosis

---

[6] The complete blood count and urinalysis reports were part of the medical record that Dr. Borigini reviewed in preparing his report. A.R. 217.

13

also included possible malingering. A.R. 26, 160 ("somatization disorder vs. malingering vs. GAD [generalized anxiety disorder] vs. conversion disorder vs. depressive disorder"). Lindsay did not return to AFH for psychological testing during the relevant time period. A.R. 26, 262.

Although an ALJ may consider an unexplained failure to seek treatment, *Thomas*, 278 F.3d at 958-59, there is some question as to whether an ALJ may discount the credibility of a claimant who claims a mental impairment on the basis of an unexplained failure to seek treatment. In *Regennitter v. Commissioner of Social Security Administration*, 166 F.3d 1294 (9th Cir. 1999), the examining physician diagnosed major depression, post-traumatic stress disorder, nightmare disorder and panic disorder, and found that the claimant exceeded a listed impairment. *Id.* at 1298. The Ninth Circuit held that the ALJ erred in rejecting the examining physician's opinion. *Id.* at 1299. Specifically as relevant here, the Ninth Circuit stated that the claimant's failure to seek treatment was not a valid reason for the ALJ to reject the examining physician's opinion. *Id.* at 1299-1300; *see Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (claimant's failure to seek treatment is not a legitimate reason to reject psychologist's opinion). By contrast, the ALJ in this case did not rely on an unexplained failure to seek treatment in order to reject a physician's opinion.

Even assuming that an unexplained failure to seek treatment cannot be considered a valid reason to discount credibility under the facts in this case,[7] the ALJ's other reasons for discounting Lindsay's credibility are supported by

---

[7] There is also a question as to whether the ALJ's citation of Lindsay's refusal to undergo surgery on his left shoulder was a legally valid reason for discounting his credibility. A.R. 26. The ALJ noted a medical record in April 2005 which indicated that Lindsay's pain in his left shoulder was "well controlled" with medication. A.R. 26 n.3, 172. On the other hand, at the December 13, 2005 hearing, Lindsay testified that he was unable to pay for the surgery. A.R. 351. A failure to obtain treatment is not a sufficient reason to deny benefits where the claimant suffers from financial hardships. *See Gamble v. Chater*, 68 F.3d 319, 320-22 (9th Cir. 1995).

14

substantial evidence and are not minor. *See Carmickle*, 533 F.3d at 1162. "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959; *Morgan v. Commissioner of the Social Security Administration*, 169 F.3d 595, 600 (9th Cir. 1999).

## IV.
## ORDER

IT IS HEREBY ORDERED that the Commissioner's decision is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: September 10, 2008

ALICIA G. ROSENBERG
United States Magistrate Judge